1   Robert B. Gerard, Esq.
    Nevada State Bar #005323
2   Ricardo R. Ehmann, Esq.
    Nevada State Bar #010576
3   **GERARD & ASSOCIATES**
    2840 South Jones Boulevard
4   Building D, Suite #4
    Las Vegas, Nevada 89146
5   Telephone:    (702) 251-0093
    Facsimile:    (702) 251-0094
6
7   Norman B. Blumenthal, Esq.
    California State Bar #068687
8   **BLUMENTHAL NORDREHAUG & BHOWMIK**
    2255 Calle Clara
9   La Jolla, California 92037
    Telephone:    (858) 551-1223
10  Facsimile:    (858) 551-1232

11  *Attorneys for Plaintiffs* (Additional Attorneys on Signature Page)

12                **UNITED STATES DISTRICT COURT**

13                    **DISTRICT OF NEVADA**

14  GEORGE ABRAHAM; A. W. VEGAS CONDO,      CASE NO.: 2:11-cv-01007
    LLC.; JOSE ABALOS and AMELIA ABALOS;  )
15  JOSHUA ADIRIM, SAGI S. ADIRIM and      )
    AARON ADIRIM; S. K.AGGARWAL; DANIEL   )   **COMPLAINT FOR:**
16  D. AHN and SARA Y. AHN; LEON           )
    ALEXANDER and SYLVIAALEXANDER;        )   (1)  VIOLATION OF SECURITIES ACT
17  EDGARDO ALICIAWAY and JANETTE          )        OF 1933
    ALICIAWAY; PAVESE ALIKSANIAN; SCOTT   )
18  ALLEN; JORGE ALONZO and DARLENE        )
    ALONZO; CHARITO ANSAY; OSCAR AQUIJE;  )   (2)  VIOLATION OF THE SECURITIES
19  WILLIAM ARAGONES; ROBERTO AREIALA;    )        EXCHANGE ACT of 1934;
    ELONORA ARONOVA and                   )
20  LINDA ARONOVA; SHELDON ARPAD and      )   (3)  VIOLATION OF N.R.S. 90.460;
    DIANA ARPAD; WALEED ARSHAID and       )
21  SUHAIR ARSHAID; FRANZ AUER and        )   (4)  VIOLATION OF N.R.S. 90.570;
    STELLA BREDER; BETTY K. AZAR;         )
22  JOSEPHINE BAJER; NIKKI BALGINY;       )   (5)  VIOLATION OF N.R.S. 598, *et seq.;*
    YOUNG BANG; MAXINE BARENS;            )
23  LEONARDO BARRERA and GLORIA C.        )
    BARRERA; JORGE R. BARRIO and MARIA C. )   (6)  FRAUDULENT
24  BARRIO; RONALD BATINO and BESSIE      )        MISREPRESENTATION;
    BATINO; KERMIT BAYLESS; MITCHELL      )
25  BOBROW; GREGORY BONHAM and            )   (7) NEGLIGENT
    ELIZABETH BONHAM; KENARIK             )   MISREPRESENTATION;
26  BOSHOUZIAN; STELLA BREDER; GARY       )
                                          )   (8) FRAUD IN THE INDUCEMENT; and
27                                        )
                                          )   (9) FRAUDULENT CONCEALMENT
28

BUHRMAN and JOAN BUHRMAN; MYRNA
CASTRO; EDWARD P. CATARSI; ERNEST R.
CAVALLARO and PAULA K. CAVALLARO;
GILBERTO CEJA; BRUCE CHADWICK;
JEWEL CHANG; MICHAEL CHIAFALIE;
LARRY CHO and STEPHANIE CHO; MYUNG
JA CHO; BRICE CHOI; ANDREW CHUPP;
CIMARRON INVESTMENT CO., LLC.;
THOMAS CLARKE; MARK COBETTO and
MICHAEL URBAN; ROBERT COHAN;
DOUGLAS COHEN; JOHN COLLINS;
DENNIS CONNELLY and CATHRYN
CONNELLY; JOHN CRIBBS; ANTHONY
CUTATAR; SILVANA D'ALESSANDRI;
MATTHEW DeFILIPPO and ELIZABETH
VULTAGGIO; RENE DeJESUS, WILHEMINA
DeJESUS; and JAMIE RODRIGUEZ; VENCAT
DEVINENI; DG CAPITAL, LLC.; LINDA ANNE
DIXON; LINDA D'LUCO; RUBY ANN
DOLLINS; JOHN DONNELLY asnd SANDRA
DONNELLY; PACIFICO D. DORADO;
ROBERT E. DUBUC and MADELINE J.
DUBUC; WILLIAM DUNN; EDGAR
ELCHICO; EVELYN ENRIQUEZ; RONALD R.
ERSKINE and DEBRA J. ERSKINE; XOCHITL
ESCOPEDO; CARMEN ESPINAS and OSCAR
ESPINAS; JON FINMARK; BARBARA
FISCHER; JEFFREY FITCH and CHERYL
FITCH; STEVEN FLETCHER and LISA
FLETCHER; JUAN FRANCISCO; FRANDEN
ENTERPRISES LTD.; HAIM GABAY;
GUSTASVO LOPEZ, AMADA LOPEZ; JOSE
GARCIA and ELIZABETH GARCIA; FRANK
GERVASI and JANICE GERVASI; JASON
GEZYB; JEROME GIULIANO and DIANE
GIULIANO; CYNTHIA GLICKMAN; VIJAY
GOLI; MARCO GONZALEZ; LYNETTE
GRIDLEY; JASON GRIFFIN and GRIS
GRIFFIN; ROBERTO GUERRERO and
IRENE GUERRERO; RICHARD GUESS;
GARY GUSIENOV; NOMER GUTIERREZ;
 STEPHEN GUYON and KATHLEEN GUYON;
WADIEH HADDAD; JEFFREY HAIG; DR. INO
HALEGUA; CORONADO HARO; STEVE
HAVERLAND and JANET HAVERLAND; HUO

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ARBITRATION EXEMPTION
CLAIMED**

1. **DAMAGES IN EXCESS OF $50,000
   PER PLAINTIFF**

2. **ACTION PRESENTS
   SIGNIFICANT ISSUES OF
   PUBLIC POLICY**

3. **ARBITRATION PROVISION
   UNCONSCIONABLE**

| | |
|---|---|
| 1 | HEIKYUNG; RICHARD HEMAR; FRANKLIN ) |
| 2 | SAMUEL HEREDIA; RICHARD D. HODGES ) |
| | and NANCY J. HODGES, TRUSTEES OF THE ) |
| 3 | HODGES FAMILY TRUST; EVA HORN; ) |
| | BARBARA HORTON; SHARON HOWARD; ) |
| 4 | ARMEN HOUANNESSIAN; LISA HSU; ) |
| 5 | EUGENE HSU; LISA HUANG and ROBERT ) |
| | LIU; LO HUANG; IGOR RTISHCHEU; ) |
| 6 | DONALD ISERI and MARY ISERI; BILLY B. ) |
| | ISLEY; WILLIAM JENKINS and FRANCES ) |
| 7 | JENKINS; LORENZO JIMENEZ; MICHAEL ) |
| 8 | JOSIAH; DOROTHY JULIUS; HAYDEE ) |
| | KABIGTING; TERESAS KALLIVROUSIS; ) |
| 9 | MICHAEL KANDOV; ) |
| | JAMES KARR and KATHRYN KARR; JAMAL ) |
| 10 | KHALAF and MAYSOON KHALAF; JASON ) |
| 11 | KIM; LANCE Y. KIM; KINGFISH ) |
| | ENTERPRISES, LLC.; LUANNE KLEIN; ) |
| 12 | RICHARD W. KOENEKE and JULIA A. ) |
| | KOENEKE; MICHAEL KOLINSKI; B. ) |
| 13 | KOLLOORI; CLIFF KOSCHNICK; JAMES ) |
| 14 | KOURY; LES KRIEGER and REBECCA ) |
| | KRIEGER; KUNKIM, SOLIP, LLC.; JOYCE ) |
| 15 | KUPSH; ARASH LALEZARY and ABTIN ) |
| 16 | MISSASGHI; MARGARET LANAM; LARRY ) |
| | LARSON; GARY LEE; LES SAINTES, LLC.; ) |
| 17 | CHARLES LESKO; MARK D. LESLEY and ) |
| | SHIRLEY LESLEY; STUART LINDER, M.D.; ) |
| 18 | TINA PENNY LIU; JOEL LOAIZA; ALBERT ) |
| 19 | LoPRESTI; PETER LoPRESTI; ANTONIO ) |
| | LoPRESTI and NICOLA LoPRESTI; MABEL ) |
| 20 | LOY and MYRNA LOY; MICHAEL LUTGEN; ) |
| 21 | AREN MAGARIAB and ALIN MAGARIAB; ) |
| | DADGAR MAHINDOKHT; AZIZ MAHOUBI ) |
| 22 | and FARAH MAHOUBI; KIM MAI and ) |
| | SONCHAU MAI; OLIVIA MANIVONG; ) |
| 23 | AMANDA MANNING; EUGENE MAR; SAM ) |
| 24 | MARCHESE and MARIA MARCHESE; DAVID ) |
| | MARTIN; SAMUEL McBIRNEY; SCOTT ) |
| 25 | McBIRNEY;  ROBERT McELLIOTT, JR.; ) |
| 26 | MAISHA McGEE-CHILDS; JOHN McLEAN; ) |
| | LEONEL MEDEIROS, JR.; JUAN MEDINA ) |
| 27 | and CLARISSA MEDINA; RICHARD MEIER ) |
| | and CAROL MEIER; CYRUS MESHKI; ) |
| 28 | RICHARD MEYERSON; MGM GROUP 18, ) |

LLC.; WILLIAM MILAN; JERRY MINTON; )
LUIS MORAN; MAURICE MORCOS; )
CHRISTOPHER ANDRE MOUTON and JEAN )
CLAUDE MOUTON; BRODIE MUNRO; )
MATTHEW NAFISI; MICHAEL NILAND and )
EUGENE YOSHII; GREGORY SCOTT NIX; )
JEFFREY NOWAK; KIERAN O'LEARY and )
DONNA O'LEARY; STEPHANIE G. OVADIA; )
DAVID OWEN; PUZANT OZBAG; FRANKLIN )
PANG; DAVID PARK; TERRY C. PARK; )
PIYUSH PATEL and LORRAINE PATEL; )
SURESH J. PATEL; ANTHONY PAVESE and )
NARDA PAVESE; PECK PROPERTIES; AJ )
REAL ESTATE V, INC.; JOHN POLAK; )
ROBERT POMORSKI; MICHAEL POULS and )
SHERYL POULS; MARTIN PRANGER; )
WILLIAM PRIA and MICHELLE PRIA; )
RANDELL PRICE and DEBRA PRICE; )
NORMAN QUAN; JAMES RAPPAPORT and )
MARILYN RAPPAPORT; STEVEN RASKIND; )
JAMES C. VAIL, ALBERT RASMUSSEN and )
MARY RASMUSSEN; JERRY RAY and LINDA )
RAY; RICHARD RAZOOK; SHIRLENE )
REEVES; DARRON R. RISHWAIN; MICHAEL )
RIVERA; DAVID ROSS; RICHARD ROTTIER )
and SHARON ROTTIER; BENJAMIN )
RUDNITSKI nd TAMAR RUDNITSKI; MARIA )
RUIZ; JOSEPH ROMANELLO and ROSLAND )
ROMANELLO; SUNHAE RYU; BERNADETTE )
SANEDRIN; WILLIAM SATERLEE; WARREN )
SAVAGE; ERIC SCHWARTZ and PHYLIS )
SCHWARTZ; SCRAM, LLC.; FRIBA )
SEKANDER; TAPAN R. SHAH, M.D.; SHEILLA )
SHANE; CARL SHIN; ALAN SILVERSTEIN; )
PETER SIM; MANUAL G. SIMANGAN; LINDA )
SIMPSON; HOOMAN SIMYAR; DAVID SIN; )
ROBERT SINN; JAMES SLADE and JANICE )
SLADE; ROBALD SLAVICK;  BEN SOIFER and )
LINDA SOIFER; HONG JIN SHUN and JUNG )
CHUL TAK d/b/a SOLIP, LLC.; MATTHEW )
SOLOMON and ELIZABETH H. SOLOMON; )
MATTHEW STABILE; JACOB SWEIDAN and )
GEBRIELA SWEIDAN; NEIL TABACHKI and )
NANCY TABACHKI; JIAN JENNY TANG; )
IMTIAZ TAR and SHEHZAAD TAR; DOBY )

TEBANGIN and VERA TEBANGIN;                      )
FRANCISCO TOLEDO and AIDELISA                    )
TOLEDO; ROBERT B. TOLEY; MARIO                   )
TRAVALINI; DEREK TRABILOY and KARRIE )
TRABILOY; HUGO TSCHUDIN and RUTH                 )
TSCHUDIN; WILLIAM TUCULET; JAVAD                 )
VAHIDI  and ANA VAHIDI; RANDALL                  )
WAKEFIELD and THERESA WAKEFIELD;                 )
SCOTT WALKER and AMANDA WALKER;                  )
PEGGY WALTERS-SHULTZ; ROBERT                     )
WEIBORT; RUTH WEISBACH; DAVID                    )
WELTSCH; ALEX WENGER; DENNIS                     )
WERNER; RICHARD WU and IVY WU; JACK )
YANG; YORAM YOSSIFOFF; KIRSTIE                   )
YOUNG; BRENDA ZIATS; MICHAEL J.                  )
MONA, JR., Trustee, MONA FAMILY TRUST; )
KIM BYUNG; NELBA HIDALGO; LUCY                   )
RAYMOND, LTD.; EDWARD T. REHNBERG; )
JONATHAN BAKTARI; JOSE SANCHEZ;                  )
AMIN RAHIM; EUN YOUNG LEE; JOHN                  )
HANSON & ELIZABETH HANSON;                       )
BASSILIOS C. PETRAKIS; RAFIK BAKIJIAN; )
BERJ ALIKSANIAN and LORI ALIKSANIAN, )
ANN DAPOLITO; MARIO MORCOS; RUBEN )
GARCIA and TERRY L. CRUM,                        )
                                                 )
                Plaintiffs,                      )
                                                 )
       vs.                                       )
                                                 )
TURNBERRY/MGM GRAND TOWERS, LLC, a )
Nevada LLC; MGM GRAND                            )
CONDOMINIUMS, LLC, a Nevada LLC;                 )
THE SIGNATURE CONDOMINIUMS,                      )
LLC, a Nevada LLC; MGM Mirage, a Delaware )
Corporation;TURNBERRY/HARMON AVE.,               )
LLC, a Nevada LLC; TURNBERRY WEST                )
REALTY, INC., a Nevada Corporation, and DOES)
1 through 99, inclusive,                         )
                                                 )
                Defendants.                      )

**COMPLAINT**

COMES NOW, Plaintiffs GEORGE ABRAHAM; A. W. VEGAS CONDO, LLC.; JOSE ABALOS and AMELIA ABALOS; JOSHUA ADIRIM, SAGI S. ADIRIM and AARON ADIRIM; S. K. AGGARWAL; DANIEL D. AHN and SARA Y. AHN; LEON ALEXANDER and SYLVIA ALEXANDER; EDGARDO ALICIAWAY and JANETTE ALICIAWAY; PAVESE ALIKSANIAN; SCOTT ALLEN; JORGE ALONZO and DARLENE ALONZO; CHARITO ANSAY; OSCAR AQUIJE; WILLIAM ARAGONES; ROBERTO AREIALA; ELONORA ARONOVA and LINDA ARONOVA; SHELDON ARPAD and DIANA ARPAD; WALEED ARSHAID and SUHAIR ARSHAID; FRANZ AUER and STELLA BREDER; BETTY K. AZAR; JOSEPHINE BAJER; NIKKI BALGINY; YOUNG BANG; MAXINE BARENS; LEONARDO BARRERA and GLORIA C. BARRERA; JORGE R. BARRIO and MARIA C. BARRIO; RONALD BATINO and BESSIE BATINO; KERMIT BAYLESS; MITCHELL BOBROW; GREGORY BONHAM and ELIZABETH BONHAM; KENARIK BOSHOUZIAN; STELLA BREDER; GARY BUHRMAN and JOAN BUHRMAN; MYRNA CASTRO; EDWARD P. CATARSI; ERNEST R. CAVALLARO and PAULA K. CAVALLARO; GILBERTO CEJA; BRUCE CHADWICK; JEWEL CHANG; MICHAEL CHIAFALIE; LARRY CHO and STEPHANIE CHO; MYUNG JA CHO; BRICE CHOI; ANDREW CHUPP; CIMARRON INVESTMENT CO., LLC.; THOMAS CLARKE; MARK COBETTO and MICHAEL URBAN; ROBERT COHAN; DOUGLAS COHEN; JOHN COLLINS; DENNIS CONNELLY and CATHRYN CONNELLY; JOHN CRIBBS; ANTHONY CUTATAR; SILVANA D'ALESSANDRI; MATTHEW DeFILIPPO and ELIZABETH VULTAGGIO; RENE DeJESUS, WILHEMINA DeJESUS; and JAMIE RODRIGUEZ; VENCAT DEVINENI; DG CAPITAL, LLC.; LINDA ANNE DIXON; LINDA D'LUCO; RUBY ANN DOLLINS; JOHN DONNELLY asnd SANDRA DONNELLY; PACIFICO D. DORADO; ROBERT E. DUBUC and MADELINE J. DUBUC; WILLIAM DUNN; EDGAR ELCHICO; EVELYN ENRIQUEZ; RONALD R. ERSKINE and DEBRA J. ERSKINE; XOCHITL ESCOPEDO; CARMEN ESPINAS and OSCAR ESPINAS; JON FINMARK; BARBARA FISCHER; JEFFREY FITCH and CHERYL FITCH; STEVEN FLETCHER and LISA FLETCHER; JUAN FRANCISCO; FRANDEN ENTERPRISES LTD.;

HAIM GABAY; GUSTASVO LOPEZ, AMADA LOPEZ; JOSE GARCIA and ELIZABETH GARCIA; FRANK GERVASI and JANICE GERVASI; JASON GEZYB; JEROME GIULIANO and DIANE GIULIANO; CYNTHIA GLICKMAN; VIJAY GOLI; MARCO GONZALEZ; LYNETTE GRIDLEY; JASON GRIFFIN and GRIS GRIFFIN; ROBERTO GUERRERO and IRENE GUERRERO; RICHARD GUESS; GARY GUSIENOV; NOMER GUTIERREZ; STEPHEN GUYON and KATHLEEN GUYON; WADIEH HADDAD; JEFFREY HAIG; DR. INO HALEGUA; CORONADO HARO; STEVE HAVERLAND and JANET HAVERLAND; HUO HEIKYUNG; RICHARD HEMAR; FRANKLIN SAMUEL HEREDIA; RICHARD D. HODGES and NANCY J. HODGES, TRUSTEES OF THE HODGES FAMILY TRUST; EVA HORN;   BARBARA HORTON; SHARON HOWARD; ARMEN HOUANNESSIAN; LISA HSU; EUGENE HSU; LISA HUANG and ROBERT LIU; LO HUANG; IGOR RTISHCHEU; DONALD ISERI and MARY ISERI; BILLY B. ISLEY; WILLIAM JENKINS and FRANCES JENKINS; LORENZO JIMENEZ; MICHAEL JOSIAH; DOROTHY JULIUS; HAYDEE KABIGTING; TERESAS KALLIVROUSIS; MICHAEL KANDOV; JAMES KARR and KATHRYN KARR; JAMAL KHALAF and MAYSOON KHALAF; JASON KIM; LANCE Y. KIM; KINGFISH ENTERPRISES, LLC.; LUANNE KLEIN; RICHARD W. KOENEKE and JULIA A. KOENEKE; MICHAEL KOLINSKI; B. KOLLOORI; CLIFF KOSCHNICK; JAMES KOURY; LES KRIEGER and REBECCA KRIEGER; KUNKIM, SOLIP, LLC.; JOYCE KUPSH; ARASH LALEZARY and ABTIN MISSASGHI; MARGARET LANAM; LARRY LARSON; GARY LEE; LES SAINTES, LLC.; CHARLES LESKO; MARK D. LESLEY and SHIRLEY LESLEY; STUART LINDER, M.D.; TINA PENNY LIU; JOEL LOAIZA; ALBERT LoPRESTI; PETER LoPRESTI; ANTONIO LoPRESTI and NICOLA LoPRESTI; MABEL LOY and MYRNA LOY; MICHAEL LUTGEN; AREN MAGARIAB and ALIN MAGARIAB; DADGAR MAHINDOKHT; AZIZ MAHOUBI and FARAH MAHOUBI; KIM MAI and SONCHAU MAI; OLIVIA MANIVONG; AMANDA MANNING; EUGENE MAR; SAM MARCHESE and MARIA MARCHESE; DAVID MARTIN; SAMUEL McBIRNEY; SCOTT McBIRNEY; ROBERT McELLIOTT, JR.; MAISHA McGEE-CHILDS; JOHN McLEAN; LEONEL MEDEIROS, JR.; JUAN MEDINA and CLARISSA MEDINA; RICHARD MEIER and CAROL

MEIER; CYRUS MESHKI; RICHARD MEYERSON; MGM GROUP 18, LLC.; WILLIAM MILAN; JERRY MINTON; LUIS MORAN; MAURICE MORCOS; CHRISTOPHER ANDRE MOUTON and JEAN CLAUDE MOUTON; BRODIE MUNRO; MATTHEW NAFISI; MICHAEL NILAND and EUGENE YOSHII; GREGORY SCOTT NIX; JEFFREY NOWAK; KIERAN O'LEARY and DONNA O'LEARY; STEPHANIE G. OVADIA; DAVID OWEN; PUZANT OZBAG; FRANKLIN PANG; DAVID PARK; TERRY C. PARK; PIYUSH PATEL and LORRAINE PATEL; SURESH J. PATEL; ANTHONY PAVESE and NARDA PAVESE; PECK PROPERTIES; AJ REAL ESTATE V, INC.; JOHN POLAK; ROBERT POMORSKI; MICHAEL POULS and SHERYL POULS; MARTIN PRANGER; WILLIAM PRIA and MICHELLE PRIA; RANDELL PRICE and DEBRA PRICE; NORMAN QUAN; JAMES RAPPAPORT and MARILYN RAPPAPORT; STEVEN RASKIND; JAMES C. VAIL, ALBERT RASMUSSEN and MARY RASMUSSEN; JERRY RAY and LINDA RAY; RICHARD RAZOOK; SHIRLENE REEVES; DARRON R. RISHWAIN; MICHAEL RIVERA; DAVID ROSS; RICHARD ROTTIER and SHARON ROTTIER; BENJAMIN RUDNITSKI nd TAMAR RUDNITSKI; MARIA RUIZ; JOSEPH ROMANELLO and ROSLAND ROMANELLO; SUNHAE RYU; BERNADETTE SANEDRIN; WILLIAM SATERLEE; WARREN SAVAGE; ERIC SCHWARTZ and PHYLIS SCHWARTZ; SCRAM, LLC.; FRIBA SEKANDER; TAPAN R. SHAH, M.D.; SHEILLA SHANE; CARL SHIN; ALAN SILVERSTEIN; PETER SIM; MANUAL G. SIMANGAN; LINDA SIMPSON; HOOMAN SIMYAR; DAVID SIN; ROBERT SINN; JAMES SLADE and JANICE SLADE; ROBALD SLAVICK; BEN SOIFER and LINDA SOIFER; HONG JIN SHUN and JUNG CHUL TAK d/b/a SOLIP, LLC.; MATTHEW SOLOMON and ELIZABETH H. SOLOMON; MATTHEW STABILE; JACOB SWEIDAN and GEBRIELA SWEIDAN; NEIL TABACHKI and NANCY TABACHKI; JIAN JENNY TANG; IMTIAZ TAR and SHEHZAAD TAR; DOBY TEBANGIN and VERA TEBANGIN; FRANCISCO TOLEDO and AIDELISA TOLEDO; ROBERT B. TOLEY; MARIO TRAVALINI; DEREK TRABILOY and KARRIE TRABILOY; HUGO TSCHUDIN and RUTH TSCHUDIN; WILLIAM TUCULET; JAVAD VAHIDI and ANA VAHIDI; RANDALL WAKEFIELD and THERESA WAKEFIELD; SCOTT WALKER and AMANDA WALKER;

PEGGY WALTERS-SHULTZ; ROBERT WEIBORT; RUTH WEISBACH; DAVID WELTSCH; ALEX WENGER; DENNIS WERNER; RICHARD WU and IVY WU; JACK YANG; YORAM YOSSIFOFF; KIRSTIE YOUNG; BRENDA ZIATS; MICHAEL J. MONA, JR., Trustee, MONA FAMILY TRUST; KIM BYUNG; NELBA HIDALGO; LUCY RAYMOND, LTD.; EDWARD T. REHNBERG; JONATHAN BAKTARI; JOSE SANCHEZ; AMIN RAHIM; EUN YOUNG LEE; JOHN HANSON & ELIZABETH HANSON; BASSILIOS C. PETRAKIS; RAFIK BAKIJIAN; BERJ ALIKSANIAN and LORI ALIKSANIAN; ANN DAPOLITO; MARIO MORCOS; RUBEN GARCIA and TERRY L. CRUM, who bring this action on behalf of themselves, and on behalf of all similarly situated persons (collectively hereinafter referred to herein as "Plaintiffs"), against Defendants, TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS, LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC, a Nevada LLC; MGM Mirage, a Delaware Corporation; TURNBERRY/HARMON AVE., LLC, a Nevada LLC; TURNBERRY WEST REALTY, INC., a Nevada Corporation, and DOES 1 through 99, inclusive (collectively hereinafter referred to herein as "Defendants"), and allege, based upon information and belief, except where otherwise stated, as follows:

## NATURE OF THE ACTION

1.      The instant Complaint involves a scheme among the Defendants through which Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel room units as investment securities (the "Securities") at the Signature at the MGM Grand Hotel/Casino in 2006 & 2007.

2.      The project was variously referred to as The Residences, The Residences at MGM Grand and/or The Residences: A Condo Hotel by Turnberry.  The name was subsequently changed prior to any closings and is currently operated under the brand name of the Signature at MGM Grand.

3.      The Plaintiffs all first acquired these Securities beginning in 2006 with the transfer of the title of the Securities from Defendants to Plaintiffs without first registering the certificate of sale of the Securities as a security as required by law and without being exempt therefrom.  The

reason the air rights to the hotel condominium units are securities is because:

    (a)    the value of the units are all dependent upon the success or failure of the MGM GRAND branded enterprise;

    (b)    Defendants' sales promotions of the investment in the hotel room gave rise to a reasonable understanding that a valuable benefit, over and above the entire amount paid for the physical air rights to the hotel room, would accrue to the Plaintiffs as a result of the operation of the enterprise as an MGM Grand branded enterprise pursuant to the MGM Grand Rental Program; and

    (c)    the Plaintiffs, as owners of shares in the enterprise, by signing on with the MGM Grand Rental Program, did not receive and did not intend to receive the right to exercise any practical or actual control over the managerial decisions of the MGM Grand enterprise.  Each sale was consummated when each Plaintiff furnished the entire amount paid for the condominium hotel units at the Signature at MGM Grand and closed the purchase as a purchase in the MGM Grand branded enterprise with the transfer of title to the Securities from Defendants to Plaintiffs.

    4.    Defendants used both inside and outside sales teams to sell the Securities.

    5.    Central to the Defendants' marketing of the Securities were the omission of material facts and the representations that the Securities would generate substantial amounts of revenue to the purchaser.  Defendants' sales teams induced the sale of the Securities through sales presentations that raised the Plaintiffs' expectations of the economic benefits of the net rental income to be obtained from the Securities branded as MGM Hotel rooms through the MGM Rental Program.  The sales presentations included the use of written materials and discussions that represented, *inter alia*,:

    (a)    on one page the price list for the units along with the maintenance fees, rental fees, revenue split and payment schedule;

    (b)    a forecast of the anticipated rental rates of the Securities as MGM branded rooms;

    (c)    comparisons of the projected net rental income of the Securities branded as MGM

Hotel rooms to other similar hotel rental rates in the area; and

(d)     projections of future occupancy rates of the Securities branded as MGM Hotel rooms.

The representations made by Defendants were not restricted to mentioning only the availability of a rental program as part of the MGM GRAND enterprise.  Rather, Defendants' marketing strategy overtly emphasized the 60/40 revenue split in favor of Plaintiffs and the amount of revenue the Plaintiffs would receive from the rental of the Securities, branded as MGM Hotel rooms with the MGM Grand enterprise and intentionally omitted material facts.

6.     The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the MGM branded hotel rooms as part of the MGM Grand enterprise went above and beyond simply mentioning that a rental program was offered by Defendants.  These discussions along with written representations were the centerpiece of the sales presentation and took place as part of the offering and sale.  The Plaintiffs' decision to enter into the MGM branded hotel room rental program was not reached independently of the decision to purchase the Securities as the MGM branded hotel room rental program was an integral part of the purchase of the Securities as an MGM branded hotel room as part of the MGM Grand enterprise and was represented as such by the Defendants.

7.     In order to purchase the Securities, the Plaintiffs individually entered into investment contracts with the Defendants whereby Plaintiffs agreed to pay to Defendants a sum certain for the Securities at the closing, at which point the Securities were transferred to Plaintiffs.

8.     The amounts Plaintiffs paid for the purchase of their Securities were subjected to the risks of the MGM GRAND enterprise to rent the rooms at a projected rate for projected days each year.  The enterprise of the MGM GRAND consists of, *inter alia*: (a) the rental program, (b) the MGM Grand Hotel, (c) the MGM Casino, and (d) the other MGM Branded amenities such as specialty retaurants, casual dining, entertainment, nightclubs, lounges, bars, grand spa, christophe salon, grand pool complex, wedding chapel, retail, the lion habitat, CBS television city and the monorail.  The rental program places the Plaintiffs' Securities into the hotel's room inventory to be

used as luxury suites by Defendants.  As a result of the rental program, Plaintiffs have no

mechanism by which to control the rental process.

9.      The sales teams falsely represented to Plaintiffs and each of them that the rental

program that would be used to arrange for the rental of the Plaintiffs' units and would be one

whereby the owner of the unit would receive 60% of the revenue of such rental and Defendants

would receive the remaining 40%.  The true facts were completely the opposite as the amount of

rental revenue allocated to Defendants exceeded 60% and the actual amount of rental revenue

received by Plaintiffs did not amount to 40%.  As part of this scheme, Defendants charged the

Plaintiffs fees which  reduced Plaintiffs' share of revenues.  Defendants also  failed to share with

Plaintiffs 100% of the revenue which was  produced as a result of the rental of the Plaintiffs' units.

For example, the revenues produced from the pay per view television, room service, internet fees,

cabana rentals, income from the mini-bar, and other common and unit elements of the MGM

Grand which were used by the renter  were not shared with the Plaintiffs.  Among the fees charged

to the Plaintiffs was a "Management" or "Sales and Marketing" fee, which is deducted before the

revenue is divided between the Defendants and the Plaintiffs, amounting to either 10% of the daily

rental rate for a standard booking or 13% of the daily rental rate for any group booking.  After the

Management fee is deducted, the amount of revenue remaining that is included in the revenue split

represents the "Rental Income" to be split with 60% going to the Plaintiffs, but subject to further

undisclosed deductions.  These further deductions not revealed until the rental agreement was

signed include a $10 per night FF&E Reserve fee, a $7-$10 per night Subject Unit Maintenance

Fee, a $20 monthly Digital Television and Internet fee, and a Monthly Transient Fee that can range

from $200 to $500 depending on the particular unit all of which are charged 100% to Plaintiffs.

The Plaintiffs are also charged 100% of an Association Fee that ranged from more than $350 per

month for a studio unit to over $800 per month for a unit with one or more bedrooms.  In addition,

Plaintiffs also pay 100% of a Shared Component Budget Fee, which in turn pays for services that

generate revenues.  During the sales presentations, Defendants touted  the amount of profits that

Plaintiffs would receive from the revenue generated by the rental of the Securities through

-12-

Defendants' rental program.  Defendants, however,  failed to mention the double dip resulting from the  front end fees and charges reducing  the Plaintiffs' share of the rental revenue and the back end revenue split again reducing Plaintiffs' share.  As a result,  Plaintiffs receive slightly more than approximately 33% of the revenues before payment of taxes and loan charges rather than the 60% as represented by Defendants.  Since the fees are assessed monthly regardless of  whether there is any revenue, the actual percentage received by Plaintiffs after payment of fees can  drop substantially as gross revenues decline as the result of reduced occupancy and/or room rates.

10.	At all relevant times, Defendants operated the MGM GRAND in Nevada and sold the Securities to purchasers in Nevada.  All offers to purchase or sell any of the Securities described herein were made in Nevada and the closing and transfer of titles to the Securities between Plaintiffs and Defendants took place in Las Vegas, Nevada and were governed by Nevada law.

11.	All of the Securities sold to Plaintiffs by Defendants were sold pursuant to substantially the same marketing strategy of fraudulently raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the Securities branded as part of the MGM enterprise and at the same time concealing the true facts.  In every sale that was made of Securities to the Plaintiffs, Defendants uniformly misrepresented the extent of the economic benefit that would be generated from the ownership of the Securities, as MGM branded Securities, and uniformly concealed material facts.

12.	In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully below.

13.	As more particularly described herein, the Securities were sold and offered in conjunction with one or more of the following three factors:

(a)	emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

(b)      the offering of participation in a rental management program; or

(c)      the offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

14.     For each and every one of the Plaintiffs, the sales process was comprised of the sale of the Securities coupled with Plaintiffs' participation in the Defendants' rental program, which constituted a scheme involving the investment of Plaintiffs' money in a common enterprise with profits to come solely from the efforts of others. The Plaintiffs did not consider the purchase of the Securities for anything other than an economic investment. The purchase of the Securities by Plaintiffs was induced by Defendants' concealment of material facts and promises of economic benefits to be derived from the entrepreneurial or managerial efforts of others.

## THE PARTIES

15.     The Plaintiffs were all original purchasers of units or assignees of original purchasers of units from Defendants. Plaintiffs are all members of the putative class in Sussex et al. v. Turnberry/MGM Grand Towers, LLC, Case No.: 2: 08-cv-00773, which was filed on February 22, 2008, amended to include class action claims on May 7, 2008 and removed to federal court on June 13, 2008. After Defendants' motion to compel arbitration was granted, the Arbitrator ruled that class action arbitration was not permitted under Defendants' arbitration agreement. The pendency of the Sussex action has tolled the running of the statute of limitations on Plaintiffs' claims.

16.     Defendant Turnberry/MGM Grand Towers, LLC., a Nevada LLC, did business as The Residences, The Residences at MGM Grand and/or The Residences: A Condo Hotel by Turnberry. The condominium hotel is currently operated under the brand of THE SIGNATURE AT MGM GRAND. Defendant Turnberry/MGM Grand Towers, LLC is, and at all relevant times mentioned herein was, a Nevada limited liability corporation. At all relevant times, Defendant Turnberry/MGM Grand Towers, LLC conducted and conducts substantial business in the State of

Nevada and substantially availed and avails itself of the Las Vegas economic market in Nevada.

17.     Defendant MGM Grand Condominiums, LLC a Nevada LLC and the Signature Condominiums, LLC, a Nevada LLC. are  the entities doing business as members and/or managers of Turnberry/MGM Grand Towers, LLC, operating the Signature at MGM Grand enterprise. Defendants Turnberry/Harmon Ave., LLC, a Nevada LLC  and Turnberry West Realty, Inc., a Nevada Corporation Associates are the entities that comprise the Turnberry enterprise which is a member and/or manager of  Turnberry/MGM Grand Towers, LLC, operating the Signature at MGM Grand enterprise and/or employed the sales agents that sold units in the Signature at MGM Grand.  Defendant MGM Mirage is a Delaware Corporation which is the controlling entity for MGM Grand Condominiums, LLC a Nevada LLC and the Signature Condominiums, LLC, a Nevada LLC. and Turnberry/MGM Grand Towers, LLC. Each of these Defendants not only knew about the existence of the fraud and illegal conduct herein alleged, but also knowingly participated in the creation, design, direction and implementation of the illegal and fraudulent scheme to sell the Securities, the training of the sales personnel, the marketing structure, and the material misrepresentations and omissions of material facts, and therefore knew that they were participating as principals as part of the control group in the fraudulent scheme for which they had the power and control to continue or discontinue.  The commission of this fraud and illegal sales of the Securities could not have occurred without the clear and precise directions from the Defendants MGM Mirage and Turnberry/Harmon Ave., LLC as to how and in what way to accomplish the fraudulent mission to victimize investors with the fraudulent and illegal sale of the Securities. These Defendants completely controlled, dominated, managed and operated the Signature at MGM Grand enterprise through Turnberry/MGM Grand Towers, LLC, MGM Grand Condominiums, LLC, The Signature Condominiums, LLC, and Turnberry West Realty, Inc. to perpetrate the fraud as herein alleged and thereby fraudulently allowed the Defendants to profit from the fraud.  As a result of their joint and several participation in the fraudulent investment scheme set forth herein, these Defendants are jointly and severally liable for Plaintiffs' damages. But for their knowing and intentional participation in this fraud, the Defendants could not have

successfully defrauded the Plaintiffs.  By means of their actual power, influence, ability to control and control over Turnberry/MGM Grand Towers, LLC entity, MGM Mirage and Turnberry/Harmon Ave., LLC induced a violation of the securities laws through their participation in and influence over the operations of Turnberry/MGM Grand Towers, LLC, that led to the material misrepresentations and omissions of materially adverse facts necessary to prevent statements from being misleading, employment of devices, schemes and artifices designed to defraud, and participation in business practices that operated as fraud or deceit, in connection with the sale and marketing of the Securities with the full knowledge of the existence of the facts for which liability of Turnberry/MGM Grand Towers, LLC is being sought.  As a result of the above, MGM Grand Condominiums, LLC, The Signature Condominiums, LLC, and Turnberry West Realty, Inc. were  mere agencies and instrumentalities of Defendants MGM Mirage and , Turnberry/Harmon Ave., LLC, and each of them, pursuant to which the single business enterprise of the the fraudulent sale of the unregistered Securities was conducted.  As a result of the above, Defendants MGM Mirage and Turnberry/Harmon Ave., LLC and the other Defendants all functioned as a single business enterprise with regard to the Securities.

18.    Various persons and entities, whose identities are at this time unknown to Plaintiffs, participated as co-participants, principals and/or agents in the violations alleged herein and performed acts and made statements in furtherance thereof.  These co-participants, principals and/or agents were knowing and willful participants in a scheme to promote, market, sell, advertise, or otherwise benefit from the fraudulent sale of the Securities offered by Defendants. When Plaintiffs learn the identities of such persons or entities, Plaintiffs will seek leave to amend this complaint to add them as Defendants.

19.    The acts charged in this Complaint have been done by some or all of Defendants and their co-participants, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendants' business or affairs.  Each of the Defendants named herein acted as the agent, principal or  co-

participant of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## JURISDICTION AND VENUE

20.    The federal law claims asserted arise under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), Rule 10-b5 promulgated thereunder, Section 12 of the Securities Act of 1933 Act ("1933 Act").   Jurisdiction is conferred by Section 27 of the 1934 Act and Section 22 of the 1933 Act.  Venue  is proper under Section 27 of the 1934 Act and Section of the 1933 Act.

## THE SCHEME

21.    This action involves a scheme by the Defendants independently and acting in concert as a single business enterprise to develop, control and operate a massive hotel project through funds derived from the sale of investment contract Securities to passive public investors and thereby reap enormous profits through the development and operation of the hotel, as well as the satisfaction of MGM's goal of creating a vast hotel complex to provide gamblers and customers for MGM's casinos, restaurants and other commercial and entertainment businesses without incurring any cost to own and operate the Signature at MGM Grand.  In order to avoid disclosing facts that would have exposed the negative aspects of the investment, Defendants intentionally and knowingly disguised their sale of these investment contract Securities as a simple real estate transaction, for the purpose of avoiding the requirement of both state and federal laws and regulations that require (a) honest and complete disclosure to investors; (b) just and honorable conduct by those who sell investments; (c) registration of the securities being sold and the incumbent disclosure involved therewith;  as well as (d) the registration and qualification of the entities and individuals selling investment contract Securities.

22.    As a result of this scheme to cheat and defraud Plaintiffs and similarly situated investors,  Defendants were able to reap hundreds of millions of illegal profits, by concealing from the unsuspecting investors the true nature of the investment scheme they had been lured into and at

the same time distribute compensation and proceeds of that scheme to themselves and their confederates without disclosure.  Through this scheme Defendants were able to conceal from their investors the material facts relating to their investments including, *inter alia*, the profits Defendants derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments;  the transactions occurring between Defendants and their confederates in this scheme as they shared and divided their spoils; the true economics of the investments and reasonable expectation of returns; the conflicts of interest between the investors and Defendants and their confederates in this scheme; and the nature and level of risks being undertaken by those who purchased these Securities that should have been disclosed.

23.     As part of their  scheme to cheat and defraud, Defendants  made the conscious decision in connection with the development of the Signature at MGM Grand and the sale and distribution of the investment contract Securities used to finance the venture to conceal the economic realities of the transactions and to design the presentation and documentation of the transactions in such a way as to hide the true nature of the transactions and conceal material facts regarding their ongoing scheme to distribute unregistered investment contract Securities to public investors.  As part of this scheme to distribute these unregistered Securities without an offering circular,   Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of a lawful distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included, *inter alia*:

(a)     a description of the business of the hotel project and the promoters of the development such that Plaintiffs could know and understand that the rooms at the Signature at MGM Grand were overflow rooms that would not be rented unless and until all of Defendants' other rooms were rented;

(b)     a description of the plan of operation of the venture, including budget information, sources of cash and anticipated expenditures such that Plaintiffs could know and understand that the represented 60% revenue share to Plaintiffs was actually no

more than approximately 33% before Plaintiffs' taxes and loan payments, and included a double dip;

(c)   the number and nature of employees to be involved in the venture such that Plaintiffs could know and understand that these employees would be paid for exclusively by Plaintiffs;

(d)   the market research and competitive information including the number of competitors and the position of the venture among competitors such that Plaintiffs could understand the rental risks and know that they would be paying monthly fixed overhead fees even when there were no rentals;

(e)   the financial information about the business of the venture, its promoters and each segment of their business such that Plaintiffs could know and understand that Defendants had no financial stake in the lack of rentals of the units at The Signature at MGM Grand because if the units were unoccupied, the event  cost Defendants nothing;

(f)   a description of the venture including revenues and expenses for similar products and services offered by the promoters of the venture during the prior three years such that Plaintiffs could know and understand the track record of the Defendants in the market in which Signature at MGM Grand was competing;

(g)   the information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

(h)   any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Plaintiffs;

(i)   information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

(j)     a description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital as the price of the Securities bore no reasonable relationship to the cash flow;

(k)     the transactions with related parties including the developers and their affiliates and relatives such that Plaintiffs could know and understand that Defendants were making a profit on each sale and the amount thereof, and that Defendants were going to withdraw at least $ 104 million of the money Plaintiffs invested as a fee;

(l)     the method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

(m)     the use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs were paying 100% of the ongoing costs of the Signature at MGM Grand and receiving approximately 33% or less of the operating income to pay their mortgages and taxes;

(n)     the identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling them the Securities;

(o)     the identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that Plaintiffs could know and understand the relationship between the members of management and others;

(p)     all material contracts relating to the venture including contracts with indemnities or promoters of the venture such that Plaintiffs could know and understand these risks; and

(q)     a description of the investment contract security including the rights and liabilities of the investors and the promoters such that Plaintiffs could analyze these rights and liabilities individually and with a representative.

24.     Each and every one of these omissions are material to an investor or prospective investor and each was intentionally omitted from disclosures made in connection with sale of the investment contract Securities by the Defendants.

25.     Plaintiffs and each of them did not know and could not reasonably have known the material facts of Defendants' scheme to defraud until after Plaintiffs had acquired their respective units because Defendants concealed the truth as to all the material facts of their scheme to defraud.

## ARBITRATION EXEMPTION CLAIMED

27.     Pursuant to Rule 3 of the Nevada Arbitration Rules, this matter should not be subject to arbitration because (1) damages for each Plaintiff are in excess of $50,000.00 and (2) significant issues of public policy are involved and (3) the arbitration provision is unconscionable.

28.     Public policy concerns dictate that Defendants cannot compel arbitration because terms of the Purchase Agreement, which include an arbitration provision, are unenforceable under NRS 90.840, subsection 1, as a matter of law because the contract is an illegal contract in the State of Nevada.  The sale of unregistered Securities renders the entire contract unenforceable as a matter of law and public policy.

29.     Public Policy concerns dictate that Defendants cannot compel arbitration because the arbitration provision in the Purchase Agreement is both procedurally and substantively unconscionable under the facts of this case.

**FIRST CAUSE OF ACTION**
**(Violation of  Section 12(a)(1) of the 1933 Act by All Defendants)**

30.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

31.    No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration exists with respect to the Securities and transactions described in this Complaint.

32.     Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of a prospectus or otherwise; (b) caused  the Securities  to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described in this Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualify for an exemption therefrom.

33.    Defendants, directly and indirectly, offered to sell, and/or sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom.. By reason of the foregoing, Defendants  have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e (c).

34.    By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act. Plaintiffs demand rescission of these sales of unregistered Securities.

35.    Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Defendants' investment contract included the following language specifically designed to conceal the fact that Defendants were selling unregistered Securities:

36.   <u>No Representation Regarding Certain Economic Benefits</u>. BUYER ACKNOWLEDGES THAT NEITHER SELLER NOR ANY OF ITS EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS HAVE REPRESENTED OR OFFERED THE UNIT AS AN INVESTMENT OPPORTUNITY FOR THE APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF. BUYER FURTHER ACKNOWLEDGES THAT NEITHER SELLER NOR ANY OF ITS EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS HAVE MADE ANY REPRESENTATIONS AS TO THE RENTAL OR OTHER INCOME FRM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT, INCLUDING POSSIBLE ADVANTAGES FROM THE OWNERSHIP OF THE UNIT UNDER FEDERAL OR STATE TAX LAWS, TO BE DERIVED FROM THE PURCHASE OF THE UNIT.

Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities  laws as alleged herein until the <u>Sussex</u> class action litigation was commenced. As a result of the active concealment of the unlawful conduct  by Defendants and the pendency of the <u>Sussex</u> action, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## SECOND CAUSE OF ACTION
### (Violation of  Section 12(a)(2) of the 1933 Act by All Defendants)

37.   Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

38.   Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers, offerors, and/or solicitors of the Securities.  Defendants offered and solicited the sale of the Securities to each Plaintiff for Defendants' own financial benefit.

39   The statements referred to hereinabove were made in scripted oral representations made by Defendants  to Plaintiffs.  The scripted oral representations to Plaintiffs contained untrue statements of material facts, omitted other facts necessary to make the statements made not misleading and failed to disclose material facts.  Defendants acted to sell the Securities by way of the scripted oral representations. Defendants' actions included preparing the scripted oral presentations and other material used in the sale of the Securities which were false and misleading because they did not disclose the material adverse facts set forth above.

-23-

40.     Plaintiffs were offered and/or purchased the Securities  pursuant to the Defendants' scripted oral representations.  Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in or made in connection with Defendants' scripted oral representations.

41.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the 1933 Act.  As a proximate result of Defendants' violations, Plaintiffs have been damaged.

42.     Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities  laws as alleged herein until shortly before the <u>Sussex</u> class action litigation was commenced. As a result of the active concealment of the unlawful conduct  by Defendants and the pendency of the <u>Sussex</u> action, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**THIRD CAUSE OF ACTION**
**(Violation of  Section 10(b) of the 1934 Act and Rule 10b-5 by All Defendants)**

43.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

44.     Defendants disseminated or approved the  statements specified above, which they knew were materially false and misleading in that they concealed and failed to disclose material facts necessary it order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     Defendants violated § 10(b) of the 1934 Act and Rule l0b-5 in that they:

(a)  Employed devices, schemes, and artifices to defraud;

-24-

(b) Omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or,

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with the purchases of Securities.

46.   Plaintiffs have suffered damages in that, as a result of Defendants' concealment of material facts, they purchased Securities with a value far less than the amount paid. Plaintiffs would not have bought these Securities if they had been aware of the true facts that were concealed and not disclosed by Defendants.

47.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases of Securities.

**FOURTH CAUSE OF ACTION**
**(Violation of N.R.S. 90.460 by All Defendants)**

48.   Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

49.   The entire amounts paid by each and every Plaintiff was subjected to the risk of the MGM Grand enterprise to rent the Securities, branded as MGM Grand Hotel rooms, at a projected rate for a projected range of days within each year. All of the economic benefits to be derived from the Security were inextricably bound to the success of the entire MGM Hotel branded enterprise as a whole. The occupancy rates of the Security, from which Plaintiffs sought to derive rental profits, were dependent upon the success of the MGM brand.

50.   The furnishing of the amounts paid by each and every Plaintiff for the Securities purchased were induced by Defendants' omissions of material fact set forth in Paragraph 23 hereinabove and representations which gave rise to a reasonable understanding among the Plaintiffs that a valuable benefit in the form of prospective economic benefits would accrue to Plaintiffs from the entrepreneurial or managerial efforts of others managing the MGM Grand

Hotel, the MGM Grand Casino, the Signature at MGM Grand and the Rental Program at the Signature at MGM Grand, induced Plaintiff to purchase the Securities.  The economic benefit, over and above the amounts paid for the purchase of the Securities, that Defendants' sales team promised would flow to Plaintiffs from the purchase of the Securities were the primary motivation behind Plaintiffs' purchase of the Securities.  Residency was never discussed as a significant motivation for purchase between any member of Defendants' sales or rental representatives and any of the Plaintiffs.

51.    Plaintiffs did not intend to receive any right to exercise practical and/or actual control over the managerial decisions of the MGM enterprise.  Furthermore, Plaintiffs did not exercise any power to influence the utilization of the capital invested in the Securities.  Instead, the economic benefits that Plaintiffs were told by Defendants would flow from the purchase of the Securities would result from name recognition of the MGM Grand brand, the strength of the rental program management, and the ability of the reservation system of the rental program to yield income after the purchase.

52.    Defendants issued the Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Nevada, did not have any preemption therefrom, and therefore Plaintiffs, under N.R.S. 90.660, may recover the consideration paid for the Securities  and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the Securities.

53.    Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

54.    Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a

writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for the Defendants' assets; an order of payment of the divisions investigative costs; or an order of such other relief as the court deems just.

### FIFTH CAUSE OF ACTION
#### (Violation of N.R.S. 90.570 by all Defendants)

55. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

56. In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

   1. Employ any device, scheme or artifice to defraud;

   2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

   3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

N.R.S. § 90.570.

57. Defendants, through the sales and rental management presentations of the unregistered Securities have employed a device, scheme or artifice to defraud described in specificity above in this Complaint and incorporated by reference herein, by making material omissions of fact as set forth in Paragraph 23 above and false representations as set forth herein.

58. Defendants, further through the sales and rental management presentations of the unregistered Securities, as described with specificity above in this Complaint and incorporated by reference herein, made several untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made not misleading in the true circumstances concerning the Defendants' actual ability to forecast or predict the profitability of participating in

-27-

Defendants' rental management program and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the Securities.

59.     Defendants, through the intentional omission of material facts and false and fraudulent sales and rental presentations described with specificity above, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by inducing Plaintiffs to purchase the Securities and enter the Defendants' rental management program based on dubious predictions of economic expectations that the Defendants knew to be false at the time such predictions were made.  Moreover, the Defendants knew that these statements were untrue and the omissions were material and misleading, but made them to defraud Plaintiffs.

60.      Plaintiffs did not know that the statements of material facts made to them by Defendants during the sales presentations were untrue or that there was an omission of a statement of material facts.

61.     Plaintiffs did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to Plaintiffs, as of the time of the sale of the Securities.

62.     Defendants, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued the Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Nevada and therefore Plaintiffs, under N.R.S. 90.660, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the Securities.

63.     Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

64.   Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for the Defendants' assets; an order of payment of the divisions investigative costs; or an order of such other relief as the court deems just.

**SIXTH CAUSE OF ACTION**
**(Violation of N.R.S. Chapter 598, et seq. by all Defendants)**

65.   Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

66.   Plaintiffs bring this claim under Nevada consumer fraud laws, particularly NRS Sections 41.600 and 598.0903, *et seq.*

67.   The  air rights to condominium hotel room units, as described above, were purchased by the Plaintiffs primarily for investment purposes.

68.   The Defendants violated their statutory duty under the Nevada Deceptive Trade Practices Act by advertising, offering and selling the air rights to condominium-hotel room units as investment securities at the Signature at the MGM Grand as described herein above.

69.   The Defendants violated their duty under the aforementioned statutes, including but not limited to, § 598.092 (5)(a), (b), (c), (f) and § 598.0923(1), by, among other things, (a) representing that the investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading; (b) making untrue statements of material facts and/or omitting to state material facts about the investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino; (c) failing to comply with applicable laws and

regulations concerning the marketing and sale of investment Securities; and/or (d) conducting the offering and sale of investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino without all the required licensing and regulatory approvals.

70.     The Defendants' actions as alleged herein were materially deceptive and constituted fraud, false pretense, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiffs would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Nevada Consumer Fraud and Deceptive Business Practices Acts.

71     Plaintiffs were injured by the many violations of the Nevada Deceptive Trade Practices Act, and Plaintiffs have thereby been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Fraudulent Misrepresentation by All Defendants )

72.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

73.     Defendants made false and fraudulent misrepresentations, as described with specificity above and incorporated by reference herein, that, inter alia, as a result of MGM Grand branding, hotel reservations, casino operations, room rates, occupancy rates, Defendants' rental program, and the other amenities being delivered by the MGM enterprise, the investment in the Securities would be profitable and the value of the Securities would appreciate, without Plaintiffs, having to provide any services or oversight of the Defendants.

74.     Defendants, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

75.     Defendants intended to induce Plaintiffs to act upon the misrepresentations by entering into the sales agreement to purchase the Securities and also entering into the rental management agreement.

76.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants.

77.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

78.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

79.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damage.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation)

80.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

81.     Defendants supplied false guidance in discussions relating to the sale of Defendants' condominium hotel units at the MGM GRAND as described with specificity above and incorporated by reference herein.  Defendants failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in Defendants'

rental management program.  Such misrepresentations were made in the course of Defendants'
business, profession or employment, and/or in any such transaction in which Defendants had a
pecuniary interest.

82.     The misrepresentations made to Plaintiffs included, inter alia, the false and
fraudulent statements described above with specificity in this Complaint and incorporated by
reference herein.

83.     Defendants, and each of them, made these representations negligently, and without
any reasonable basis for believing them to be true.

84.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments
made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants
and each of them.

85.     As a direct and proximate result of Defendants' misstatements and
misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of
the condominium hotel, entered into a written agreement to participate in the Defendants' rental
management program, and suffered damages as more fully set forth herein above and in an
amount to be proved at trial.

86.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an
accounting, and the return of any and all money or property given, plus interest and expenses.

**NINTH CAUSE OF ACTION**
**(Fraud in the Inducement)**

87.     Plaintiffs reallege and incorporate herein by reference the allegations contained in
the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

88.     Plaintiffs contracted with Defendants  and relied upon Defendants to provide their
professional expertise and judgment with respect to the purchase of condominium hotel units at

the MGM GRAND.  Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their consent to enter into the purchase agreement and the rental management agreement.  Both Defendants' inside and outside sales team had knowledge or belief that the representations were false (or knowledge that it had an insufficient basis for making the representations).

89.    The material omissions and false representations made to Plaintiffs included, *inter alia*, the fraudulent statements described with specificity above and incorporated by reference herein.

90.    Defendants presented numerous false representations regarding the true economic value of such investment from Plaintiffs, despite knowing and concealing the true and correct facts of the rental values, expected rental occupancy rate of the Securities, and the amount of profits Plaintiffs would receive from participating in Defendants' rental management program.

91.    Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the Securities.  Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

92.    The concealment of the true facts from Plaintiffs was done with the intent to induce their consent to enter into the purchase agreement and the rental management agreement.

93.    Plaintiffs justifiable reliance on statements made by Defendants was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

94.    As a result of Defendants' false representations regarding the true economic  value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.

95.    As a result of the false representations, Plaintiffs entered into a written agreement for the purchase of the condominium hotel unit, entered into a written agreement to participate in

the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

96.    As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

97.    Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## TENTH CAUSE OF ACTION
### (Fraudulent Concealment)

98.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

99.    Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of Securities at the MGM GRAND.  Defendants utilized an inside and outside sales team in order to sell these units.  The teams employed by Defendants concealed and/or suppressed materials facts relating to the true economic value of the condominium units.

100.    The material facts concealed from Plaintiffs included, inter alia, the fraudulent statements described with specificity above and incorporated by reference herein.

101.    Defendants concealed and suppressed the material facts regarding the true economic value of such investment from Plaintiffs, despite knowing the true and correct facts regarding the Securities.  The misrepresentations were made and the true and correct facts concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the condominium unit and enter into the rental management agreement with Defendants.

102.    Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the rental values, expected rental occupancy rate,

and relevant material facts described above and incorporated by reference herein.  Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

103.   Plaintiffs' reliance on statements made by Defendants, and each of them, was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

104.   As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.  Had Plaintiffs been aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

105.   As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the Securities, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

106.   As a result, Plaintiffs are, in the alternative, entitled to rescission of the contrac, an accounting, and the return of any and all money or property given, plus interest and expenses.

107.   Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## REQUEST AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief as follows:

1.     For damages according to proof;

2.     For interest on all damages as allowed by the laws of the State of Nevada according to proof at time of trial;

3.     For a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus;

4.     For the imposition of a civil penalty of not more than $2,500 for a single violation or  $100,000 for multiple violations in a single proceeding or a series of related proceedings;

5.     For the issuance of a declaratory judgment;

6.     For an order of rescission and restitution to investors;

7.     For an order for an accounting;

8.     For an order of punitive damages.

9.     For the appointment of a receiver or conservator for the Defendants' assets;

10.    For an order of payment of the divisions investigative costs;

11.    For an order of such other relief as the court deems just;

12.    For consideration paid for the Securities and interest at the legal rate of Nevada  from the date of payment plus all expenses incurred, costs and reasonable attorney's fees, less the amount of income received on the Securities; and .

13.    For damages for each Plaintiff who no longer owns the Securities in the amount that would be recoverable upon a tender less the value of the Securities when the Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

Dated:   June 21, 2011                              GERARD & ASSOCIATES


By:          */s/ Robert Gerard*
                Robert B. Gerard, Esq

-36-

Nevada State Bar #005323
Ricardo R. Ehmann, Esq.
Nevada State Bar #010576
**Gerard & Associates**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, Nevada  89146
Telephone:      (702) 251-0093
Facsimile:      (702) 251-0094

Norman Blumenthal, Esq.
California State Bar #068687
**Blumenthal Nordrehaug &
Bhowmik**
2255 Calle Clara
La Jolla, California 92037
Telephone:      (858) 551-1223
Facsimile:      (858) 551-1232

Robert Fellmeth, Esq.
California State Bar #49897
5998 Alcala Park
San Diego, California 92110
Telephone:      (619) 260-4806
Facsimile:      (619) 260-4753

Burton Wiand, Esq.
**Wiand Guerra King**
3000 Bayport Drive, Suite 600
Tampa, FL 33607
Telephone:      (813) 228-7411
Facsimile:      (813) 229-8313

*Attorneys For The Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs demand jury trial on issues triable to a jury.

Dated: June 21st , 2011                              **GERARD & ASSOCIATES**


                                          By:      */s/ Robert Gerard*

                                                   Robert B. Gerard, Esq
                                                   Nevada State Bar #005323
                                                   Ricardo R. Ehmann, Esq.
                                                   Nevada State Bar #010576
                                                   **Gerard & Associates**
                                                   2840 South Jones Blvd.
                                                   Building D, Unit 4
                                                   Las Vegas, Nevada  89146
                                                   Telephone:     (702) 251-0093
                                                   Facsimile:     (702) 251-0094

                                                   Norman B. Blumenthal, Esq.
                                                   California State Bar #068687
                                                   **Blumenthal Nordrehaug &
                                                   Bhowmik**
                                                   2255 Calle Clara
                                                   La Jolla, California 92037
                                                   Telephone:     (858) 551-1223
                                                   Facsimile:     (858) 551-1232

                                                   Robert Fellmeth, Esq.
                                                   California State Bar #49897
                                                   5998 Alcala Park
                                                   San Diego, California 92110
                                                   Telephone:     (619) 260-4806
                                                   Facsimile:     (619) 260-4753

                                                   Burton Wiand, Esq.
                                                   Florida State Bar #407690
                                                   **Wiand Guerra King**
                                                   3000 Bayport Drive, Suite 600
                                                   Tampa, FL 33607
                                                   Telephone:     (813) 228-7411
                                                   Facsimile:     (813) 229-8313


                                                   *Attorneys For The Plaintiffs*

-38-